IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal No. 21-CR-16 (MAD) |
| v. | **Rule 11(c)(1)(C) Plea Agreement** |
| **DAIM LOGISTICS, INC.,** | |
| **Defendant.** | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant **DAIM Logistics, Inc. ("DAIM")** (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1)  **Corporate Authorization:** The undersigned representative is authorized to enter into this plea agreement on behalf of the defendant and thereby bind the defendant to the terms of the plea agreement as evidenced by the resolution of **DAIM**, attached to, and hereby incorporated by reference in, this plea agreement as Exhibit 1. The defendant further agrees and acknowledges that the plea of guilty will be entered by the defendant through its undersigned attorney and that the undersigned attorney is authorized to enter the plea of guilty on the defendant's behalf.

2)  **The Defendant's Obligations:**

   a) **Guilty Plea:** The defendant will waive indictment and plead guilty to Count One of the information in Case No. 21-CR-16 (MAD), charging the defendant with tampering with a required Clean Air Act monitoring device, in violation of 42 U.S.C. § 7413(c)(2)(C).

   b) **Special Assessment:** The defendant will pay an assessment of $400 per count of conviction pursuant to 18 U.S.C. § 3013. The defendant agrees to deliver a check or money

order to the Clerk of the Court in the amount of $400, payable to the U.S. District Court, at the time of sentencing.

c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

d) **Access to Records:** The defendant will provide any privacy waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the defendant's financial disclosures. The defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information provided by the defendant to the U.S. Probation Office.

e) **No Transfer of Assets:** The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this plea agreement and/or that may be imposed by the Court. In addition, the defendant promises not to make any such transfers in the future.

f) **Payment of Fine:** The defendant agrees to pay a fine in the amount of $13,000. The defendant will pay the fine by delivering, within sixty days of the date on which it pleads guilty, a certified check payable to the U.S. District Court.

g) **Inspection of Facilities:** Between the date on which this agreement is executed by all parties and January 1, 2023, the defendant shall allow any and all personnel from the Environmental Protection Agency ("EPA") or the New York State Department of Environmental Conservation ("NYSDEC") to visit and inspect its facilities and vehicles without notice for compliance with this agreement and with all applicable laws and regulations relating to the Clean Air Act.

h) **Environmental Compliance:** Beginning on the date this agreement is signed by all parties and continuing to and through January 1, 2023, the defendant agrees to comply with any and all applicable federal, state, and local laws and regulations regarding the emissions control devices installed on the diesel vehicles owned or operated by the defendant, and annually certify that the defendant has complied with applicable laws for the preceding year. Each letter report shall be submitted within thirty days of the applicable anniversary date of the date the defendant signs this agreement and mailed to:

> United States Attorney's Office
> Northern District of New York
> 445 Broadway, Suite 218
> Albany, NY 12207

Each letter report should reference case number 21-CR-16 (MAD).

3) **The Government's Obligations:**

a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the information in Case No. 21-CR-16 (MAD) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

4) **Agreed-Upon Disposition:** Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Government and the defendant agree that the sentence of a fine of $13,000, and a special assessment of $400, is the appropriate disposition of this case. The United States Attorney's Office and the defendant agree that, to the extent the agreed-upon disposition departs from the applicable sentencing guidelines

range, that departure would be made for justifiable reasons under U.S.S.G. §6B1.2(c)(2). In particular, the specified sentence is reasonable and appropriate under the unique combination of facts and circumstances relating to the defendant, the offense of conviction, and related relevant conduct.

5)     **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offense to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

   a) **Maximum fine:** $500,000, pursuant to 18 U.S.C. § 3571(c)(3).

   b) **Maximum term of Probation:** 5 years, pursuant to 18 U.S.C. § 3561(c).

   c) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

6)     **Elements of Offense:** The defendant understands that the following are the elements of the offense to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements:

   a) First, the defendant knowingly tampered with or rendered inaccurate a monitoring device or method; and

   b) Second, the monitoring device or method was required to be maintained under the Clean Air Act.

7)     **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offense to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to that offense:

   a) From July 2017, through and including March 2019, the defendant, a trucking company located at 128 Park Drive, Fultonville, New York 12072, made physical alterations to the

emissions control systems on 13 heavy-duty diesel trucks in its trucking fleet. Specifically, the defendant removed the trucks' Diesel Particulate Filters ("DPFs"), Diesel Exhaust Fluid ("DEF") units, and a portion of their Selective Catalytic Reduction ("SCR") systems. Additionally, the defendant hired a third party to reprogram the vehicles' on-board computers so that the emissions control systems' sensors would not detect the physical alterations described above.

b) By removing the trucks' DPFs and DEF units, and partially removing the SCRs, and by reprogramming the trucks' on-board computers, the defendant tampered with the trucks' emissions control monitoring devices or methods. These alterations prevented the affected diesel trucks in the defendant's fleet from accurately recording the emissions and other pollutants released by the trucks, and they allowed the trucks to emit more pollutants into the atmosphere than the monitoring devices would have allowed but for the tampering. These alterations also allowed the defendant's affected trucks to operate on public roads in the Northern District of New York and throughout the United States, despite being out of compliance with the Clean Air Act and its enabling regulations.

c) The defendant tampered with the trucks in the manner described above in an attempt to save money by avoiding maintenance expenses on emissions control systems and by spending less money on fuel.

d) The affected trucks' emissions control monitoring devices or methods were required to be maintained under the Clean Air Act, pursuant to 42 U.S.C. § 7521(m)(1); 40 C.F.R. §§ 86.010-18(a) and 86.1806-5(a)(1). The defendant knew and understood that the alterations it made to its diesel trucks violated the law.

8)    **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

a) The conviction resulting from the defendant's guilty plea;

b) Any claim that the statute to which the defendant is pleading guilty is unconstitutional;

c) Any claim that the admitted conduct does not fall within the scope of the statute;

d) Any sentence consistent with the agreed-upon disposition described above or any less severe sentence;

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right. Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination. The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Court is neither a party to, nor bound by this Plea Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office. If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

    a. **Maximum terms of imprisonment:** The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

    b. **Mandatory minimum terms of imprisonment:** If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

c. **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d. **Sentencing guidelines:**

   i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

   ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

   iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level

different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e.  **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f.  **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the

Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g.  **Government's Discretion to Recommend a Sentence:**  Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h.  **Sentencing-Related Information:**  The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8.  No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence.  The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report.  The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i.  **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more

supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F.  **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

a.  Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b.  If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship.  If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States.  Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud.  Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c.  A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G.  **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H.  **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

a.  The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth

above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

b.  The defendant consents to the entry of an order of forfeiture of the assets described above.

c.  The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents.  The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court.  The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d.  Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture.  Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e.  In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets transferred to any such third party.  The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.  The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to

transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.  The defendant waives the right to a jury trial on the forfeiture of assets.  The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.  The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.  The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.  In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property.  The defendant shall not reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

I.  **Determination of Financial Condition and Payment of Interest and Penalties:**

a.  In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the

defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

b.  The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

c.  The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

d.  Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**J.  Remedies for Breach:**

a.  Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part.  In the event of such breach, the defendant will remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b.  If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

i.  To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

ii.  In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

iii.  To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

iv.  To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

v.  To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

vi.  To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below. No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

ANTOINETTE T. BACON
Acting United States Attorney


Emily C. Powers                                    8/19/2021
Assistant United States Attorney                   Date
Bar Roll No. 5139205


DAIM Logistics, Inc.                               8/13/21
Defendant                                          Date


Peter J. Moschetti, Jr.                            8/13/2021
Attorney for Defendant                             Date
Bar Roll No. 102226

DAIM LOGISTICS, INC.
WRITTEN CONSENT OF THE BOARD OF DIRECTORS

Plea Agreement

RESOLVED, that the Board of Directors of DAIM Logistics, Inc. has been presented with a draft of a plea agreement (the Plea Agreement) to be entered into by DAIM Logistics, Inc., and hereby authorizes and directs DAIM Logistics, Inc. to enter into the Plea Agreement to resolve a criminal investigation by the United States Attorney's Office for the Northern District of New York; and further

RESOLVED, that DAIM Logistics, Inc. is hereby authorized and directed to plead guilty to the charge specified in the Plea Agreement in the United States District Court for the Northern District of New York; and further

RESOLVED, that legal counsel for DAIM Logistics, Inc., Anderson, Moschetti & Taffany, PLLC and/or any other corporate officer of DAIM Logistics, Inc., is hereby authorized and directed to execute the Plea Agreement and all other documents necessary to carry out the provisions of the plea agreement; and further

RESOLVED, that legal counsel for DAIM Logistics, Inc., Anderson, Moschetti & Taffany, PLLC, and/or any other corporate officer of DAIM Logistics, Inc., is hereby authorized and directed to appear on behalf of DAIM Logistics, Inc. in the United States District Court for the Northern District of New York and enter such guilty plea; and further

RESOLVED, that legal counsel for DAIM Logistics, Inc., Anderson, Moschetti & Taffany, PLLC, and/or any other corporate officer of DAIM Logistics, Inc., is hereby authorized and directed to acknowledge on behalf of DAIM Logistics, Inc. that the Plea Agreement and related documents fully set forth the agreement between DAIM Logistics, Inc. and the United States Attorney's Office for the Northern District of New York, and that no additional promises or representations have been made to DAIM Logistics, Inc. by any official of the United States in connection with the Plea Agreement, other than those set forth in the related documents submitted to this Court as part of the plea; and further

RESOLVED, that the President of DAIM Logistics, Inc., Christian Oare, or the Vice President of DAIM Logistics, Inc., Patrick Oare, are authorized and directed to make any payments required in connection with the Plea Agreement; and further

RESOLVED, that the officers of DAIM Logistics, Inc. be, and each of them hereby is, authorized and empowered, in the name of DAIM Logistics, Inc. to make all such arrangements to do and perform all such acts and things, and to deliver all such certificates and other instruments and documents as they may deem appropriate in order to effectuate fully the purpose of each and all of the foregoing resolutions, and that any and all action taken heretofore and hereafter to accomplish such purposes, all or in singular, be and they hereby are approved, ratified and confirmed.

DATED: 6/5/21

**CHRISTIAN OARE**, President
DAIM Logistics, Inc.

DATED: 8/5/21

**PATRICK OARE**, Vice President
DAIM Logistics, Inc.

DAIM LOGISTICS, INC.

SECRETARY'S CERTIFICATE

I, PATRICK OARE, do hereby certify that I am secretary of DAIM Logistics, Inc., a New York corporation (the "Company") and do hereby further certify that:

Attached hereto are true, correct and complete resolutions of the Board of Directors of the Company adopted on the _____ day of August, 2021. These resolutions have not been modified, amended or rescinded and remain in full force and effect as of the date thereof.

IN WITNESS THEREFORE, I have executed this Secretary's Certificate on behalf of the Company on this _____ day of August, 2021.

_____

**PATRICK OARE**, Secretary
DAIM Logistics, Inc.

# *STATE OF NEW YORK*

# *DEPARTMENT OF STATE*

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on October 9, 2007.

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

0710009000

**Drawdown #8S**

## Certificate of Incorporation
## of
## Daim Logistics Inc.

### Under Section 402 of the Business Corporation Law

**FIRST:** The name of the corporation is Daim Logistics Inc.

**SECOND:** This corporation is formed to engage in any lawful act or activity for which a corporation may be organized under the Business Corporation Law, provided that it is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency or other body without such consent or approval first being obtained.

**THIRD:** The county, within this state, in which the office of the corporation is to be located is Fulton.

**FOURTH:** The total number of shares which the corporation shall have authority to issue and a statement of the par value of each share is 1500 shares of common class stock with a par value of 1 par value per share.

**FIFTH:** The Secretary of State is designated as agent of the corporation upon whom process against the corporation may be served. The address to which the Secretary of State shall mail a copy of any process accepted on behalf of the corporation is:

Patrick Oare
13 E Madison Ave.
Johnstown, New York 12095

**SIXTH:** The name and street address in the state of New York of the registered agent upon whom process against the corporation may be served is:

Patrick Oare
13 E Madison Ave.
Johnstown, New York 12095

10/05/2007 13:40 FAX  8188798005                                    ☑005/005

071009000 602

## INCORPORATOR SIGNATURE AND INFORMATION

Signature: _____

Patrick Oare
13 E Madison Ave.
Johnstown, New York  12095

### Certificate of Incorporation
of
Daim Logistics Inc.

Under Section 402 of the Business Corporation Law

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED  OCT 09 2007

TAX $
BY

Fulton

Filed by:

Patrick Oare
13 E Madison Ave.
Johnstown, New York  12095

Bill To:

MyCorporation.com – Drawdown Account # 8S

674

2007 OCT -9 PM 12: 14
FILED

2007 OCT -9 AM 9: 03
RECEIVED

**ACTION BY WRITTENCONSENT OF**
**THE SOLE INCORPORATOR OF**
**DAIM Logistics Inc,**
a New York Corporation,
October 7, 2007

The undersigned, acting as the sole incorporator of **DAIM Logistics Inc**, a New York corporation (the "Corporation"), hereby approves and adopts the following resolutions by this written consent without a meeting (this "Written Consent") pursuant to Section 404 of the New York Business Corporation Law, which shall be effective upon the commencement of the corporation's existence:

RESOLVED, that the bylaws regulating the conduct of the Corporation's business and affairs, in the form attached to this Written Consent, are hereby adopted as the bylaws of the Corporation ("Bylaws").

RESOLVED FURTHER, that the Secretary of the Corporation is hereby authorized and directed to execute a certificate of the adoption of the Bylaws, to insert the Bylaws as so certified and as may be amended from time to time, in the minute book of the Corporation and to see that a copy of the Bylaws, similarly certified, is kept at the principal executive office for the transaction of business of the Corporation, as required by law.

RESOLVED FURTHER, that each person named below is hereby elected to serve as a director of the Corporation until the first annual meeting of shareholders or such time as his or her successor is duly elected and qualified:

Patrick Oare
Christian Oare

RESOLVED FURTHER, that the officers of the Corporation, as elected by the Corporation's Board of Directors, are authorized and directed to insert a copy of this Written Consent in the minute book of the Corporation.

RESOLVED FURTHER, that the undersigned, the sole incorporator of the Corporation, hereby resigns as the incorporator of the Corporation, effective upon the commencement of the corporation's existence.

**Section 1.6. Voting; Proxies.** At any meeting of the shareholders, every registered owner of shares entitled to vote may vote in person or by proxy (pursuant to Section 609 of the New York Business Corporation Law) and, except as otherwise provided by the New York Business Corporation Law, in the certificate of incorporation of the Corporation as may be amended from time to time ("Certificate of Incorporation") or the bylaws of the Corporation as may be amended from time to time (the "Bylaws"), shall have one vote for each such share standing in his or her name on the books of the Corporation. Except as otherwise required by the New York Business Corporation Law, the Certificate of Incorporation or the Bylaws, the directors shall be elected by a plurality of the votes cast at a meeting of shareholders by the holders of shares entitled to vote. In all other matters, unless otherwise provided by the New York Business Corporation Law or by the Certificate of Incorporation or the Bylaws, the affirmative vote of the holders of a majority of the shares entitled to vote on the subject matter at a meeting in which a quorum is present shall be the act of the shareholders.

**Section 1.7. Chairperson of Meetings.** The Chairperson of the Board, or, in his or her absence, the President shall preside at all meetings of the shareholders. In their absence, a chairperson may be appointed by a majority of shareholders present at the meeting.

**Section 1.8. Secretary of Meetings.** The Secretary of the Corporation shall act as secretary of all meetings of the shareholders. In the absence of the Secretary, the chairperson of the meeting shall appoint any other person to act as secretary of the meeting.

**Section 1.9. Shareholder Action Without Meeting.** Whenever shareholders are required or permitted to take any action by vote, such action may be taken without a meeting by written consent, setting forth the action so taken, signed by the holders of all shares outstanding and entitled to vote or, if the Certificate of Incorporation so permits, signed by the holders of outstanding shares having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

**Section 1.10. Fixing Record Date.** For the purpose of determining the shareholders entitled to notice of or to vote at any meeting of shareholders or any adjournment thereof, or to express consent to or dissent from any proposal without a meeting, or for the purpose of determining shareholders entitled to receive payment of any dividend or other distribution or the allotment of any rights, or for the purpose of any other action, the Board of Directors may fix a record date for any such determination of shareholders, which date shall be not more than 60 nor less than 10 days before the date of any such meeting, nor more than 60 days prior to any other action; and in any such case, only shareholders of record at the time so fixed shall be entitled to notice of and to vote at such meeting or to express such consent or dissent, or to receive such dividend, distribution or rights, or to be considered shareholders for the purposes of such other action, as the case may be.

## ARTICLE II

### Board of Directors

**Section 2.1. Number of Directors.** The number of directors constituting the entire Board of Directors shall be 2, until changed from time to time by action of the shareholders or as designated by resolution of a majority of the entire Board of Directors adopted prior to the election of directors at any annual meeting of shareholders. The "entire Board of Directors" as used herein shall mean the total number of directors which the Corporation would have if there were no vacancies.

**Section 2.2. Election, Term and Powers.** Except as limited by the Certificate of Incorporation, the Board of Directors shall have the management and control of the affairs and business of the Corporation. The directors shall be elected by the shareholders at each annual meeting of shareholders. Each such director shall serve until his or her successor is elected or appointed and qualified, unless his or her directorship is vacated by resignation, death, removal, or otherwise.

**Section 2.3. Vacancies.** Subject to the requirements of Section 705 of the New York Business Corporation Law, whenever any vacancy occurs in the Board of Directors by reason of death, resignation, increase in the number of directors or otherwise, it may be filled by a majority of the directors then in office, although less than a quorum, or by the sole remaining director, for the balance of the term, or, if the Board of Directors has not filled such vacancy or if there are no remaining directors, it may be filled by the shareholders.

**Section 2.4. Regular Meetings.** Regular meetings of the Board of Directors may be held without notice at such times and places as the Board of Directors may from time to time determine.

**Section 2.5. Special Meetings.** Special meetings of the Board of Directors may be called by order of the Chairperson of the Board, the President or any two directors. Written notice (including via e-mail) of the time and place of each special meeting shall be given to each director by or at the direction of the person or persons calling the meeting at least two days before the meeting. Except as otherwise specified in the notice thereof, or as required by statute, the Certificate of Incorporation or the Bylaws, any and all business may be transacted at any special meeting.

**Section 2.6. Organization.** Every meeting of the Board of Directors shall be presided over by the Chairperson of the Board, or, in his or her absence, the President. In the absence of the Chairperson of the Board and the President, a presiding officer shall be chosen by a majority of the directors present. The Secretary of the Corporation shall act as secretary of the meeting, but, in his or her absence, the presiding officer may appoint any person to act as secretary of the meeting.

**Section 2.7. Quorum; Vote.** Unless the Certificate of Incorporation provides otherwise, a majority of the directors then in office (but in no event less than one-third of the total number of directors) shall constitute a quorum for the transaction of business, but from time to time less than a quorum may adjourn any meeting to another time or place until a quorum is present, whereupon the meeting may be held, as adjourned, without further notice. Except as otherwise required by the New York Business Corporation Law, the Certificate of Incorporation or the Bylaws, all matters coming before any meeting of the Board of Directors shall be decided by the vote of a majority of the directors present at the meeting, a quorum being present.

**Section 2.8. Action Without Meeting.** Any action required or permitted to be taken by the Board of Directors may be taken without a meeting if all members of the Board of Directors consent in writing to the adoption of a resolution or resolutions authorizing the action, which resolution or resolutions, and the written consents thereto by the members of the Board of Directors, shall be filed with the minutes of the proceedings of the Board of Directors. Any one or more members of the Board of Directors may participate in a meeting of such Board of Directors by means of a conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time. Participation by such means shall constitute presence in person at a meeting.

**Section 2.9. Committees.** The Board of Directors, by resolution adopted by a majority of the entire Board of Directors, may appoint an executive committee and other committees, each consisting of one or more directors, which, to the extent provided in the resolution appointing them, shall have all of the authority of the Board of Directors, with the exception of any authority the delegation of which is prohibited by Section 712 of the New York Business Corporation Law. Each such committee shall serve at the pleasure of the Board of Directors which may fill vacancies in, change the membership of, or discharge any such committee at any time.

**Section 2.10. Removal.** Subject to Section 706 of the New York Business Corporation Law, the shareholders may remove any one or more of the directors with or without cause.

## ARTICLE III

### Officers

**Section 3.1. General.** The Board of Directors shall elect the officers of the Corporation, which will include a President, a Secretary and a Treasurer and such other or officers as the Board of Directors may designate which may include, without limitation, a Chairperson of the Board of Directors, Vice Chairperson of the Board of Directors, one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers.

**Section 3.2. Term of Office; Removal and Vacancy.** Each Officer shall hold office until the meeting of the Board of Directors following the next annual meeting of shareholders and until his or her successor has been elected and qualified, or until his or her earlier resignation or removal. Any officer shall be subject to removal with or without cause at any time by the Board of Directors. Vacancies in any office, whether occurring by death, resignation, removal or otherwise, may be filled by the Board of Directors.

**Section 3.3. Powers and Duties.** Each of the officers of the Corporation shall, unless otherwise ordered by the Board of Directors, have such powers and duties as generally pertain to their respective offices, as well as such powers and duties as from time to time may be conferred upon him or her by the Board of Directors. Unless otherwise ordered by the Board of Directors after the adoption of the Bylaws, the Chairperson of the Board, or, when the office of the Chairperson of the Board is vacant, the President shall be the Chief Executive Officer of the Corporation.

ARTICLE IV

Capital Stock

**Section 4.1. Certificates of Stock.** The interest of each shareholder of the Corporation shall be evidenced by certificates for shares in such form not inconsistent with the New York Business Corporation Law or the Certificate of Incorporation and shall be signed by the Chairperson of the Board, a Vice Chairperson of the Board, the President or a Vice President and also by the Treasurer or the Assistant Treasurer or the Secretary or an Assistant Secretary. The signatures of the officers upon a certificate may be facsimiles if the certificate is countersigned by a transfer agent or registered by a registrar other than the Corporation itself or its employees, or if the shares are listed on a registered national securities exchange. In case any officer who has signed or whose facsimile signature has been placed upon a certificate ceases to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he or she were such officer at the date of its issue.

**Section 4.2. Transfer of Stock.** Shares of capital stock of the Corporation shall be transferable on the books of the Corporation only by the holder of record thereof, in person or by duly authorized attorney, upon surrender and cancellation of certificates for a like number of shares, with an assignment or power of transfer endorsed thereon or delivered therewith, duly executed, and with such proof of the authenticity of the signature and of authority to transfer, and of payment of transfer taxes, as the Corporation or its agents may require. The Board of Directors shall have power and authority to make all such other rules and regulations as it may deem expedient concerning the issue, transfer and registration of certificates for shares of the Corporation. The existence of restrictions on the sale or transfer of shares or any other matters required by law to be so disclosed upon the share certificates of the Corporation shall be noted conspicuously on the face or back of every certificate for shares issued by the Corporation.

**Section 4.3. Ownership of Stock.** The Corporation shall be entitled to treat the holder of record of any share or shares of stock as the owner thereof in fact and shall not be bound to recognize any equitable or other claim to or interest in such shares on the part of any other person, whether or not expressly provided by law. The Corporation may issue a new certificate for shares in place of any certificate theretofore issued by it, alleged to have been lost or destroyed, and the Board of Directors may require the owner of any lost or destroyed certificate, or his or her legal representative, to give the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against it on account of the alleged loss or destruction of any such certificate or the issuance of any such new certificate.

ARTICLE V

Miscellaneous

**Section 5.1. Corporate Seal.** The seal of the Corporation shall be circular in form and shall contain the name of the Corporation and the year and state of incorporation.

**Section 5.2. Fiscal Year.** The Board of Directors shall have power to fix, and from time to time to change, the fiscal year of the Corporation.

**Section 5.3. Dividends.** Subject to applicable law, dividends may be declared and paid out of earned surplus only, in such amounts, and at such time or times as the Board of Directors may determine, so long as the Corporation is not insolvent when such dividend is paid or rendered insolvent by the payment of such dividend. Before payment of any dividend, there may be set aside out of the net profits of the corporation available for dividends such sum or sums as the Board of Directors from time to time in its absolute discretion deems proper as a reserve fund to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Board of Directors shall think conductive to the interests of the corporation, and the Board of Directors may modify or abolish any such reserve.

ARTICLE VI

Indemnification

The Corporation may indemnify any director, officer, employee or agent of the Corporation to the fullest extent permitted by the New York Business Corporation Law and other applicable law.

ARTICLE VII

Books and Records

**Section 7.1. Records.** The Corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of the shareholders, of the Board of Directors, and/ or any committee which the directors may appoint, and shall keep at the office of the Corporation in the state of New York or at the office of the transfer agent or registrar, if any, a record containing the names and addresses of all shareholders, the number and class of shares held by each, and the dates when they respectively became the owners of record thereof. Any of the foregoing books, minutes, or records may be in written form or in any other form capable of being converted into written form within a reasonable time.

ARTICLE VIII

Amendment

The Board of Directors shall have the power to adopt, amend or repeal the Bylaws of the Corporation by vote of a majority of the entire Board of Directors, subject to the provisions of Section 602 of the New York Business Corporation Law and also subject to the power of the shareholders to amend or repeal the Bylaws made or altered by the Board of Directors.

*[Remainder Intentionally Left Blank.]*

ADOPTION OF BYLAWS BY SOLE INCORPORATOR

OF

DAIM LOGISTICS Inc.

The undersigned, as sole incorporator of DAIM Logistics Inc. , a New York corporation (the "Corporation"), hereby adopts the attached bylaws as the bylaws of the Corporation.

Executed as of October 9, 2007.

_____
Sole Incorporator

**CERTIFICATE BY SECRETARY OF ADOPTION**
**OF BYLAWS BY SOLE INCORPORATOR**

**OF**

**DAIM Logistics Inc**

The undersigned, Patrick Oare, as Secretary of DAIM Logistics Inc, a New York corporation (the "Corporation"), hereby certifies the attached document is a true and complete copy of the bylaws of the Corporation and that such bylaws were duly adopted by the sole incorporator of the Corporation on the date set forth below.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of O c t o b e r 7, 2 0 0 7.

_____
Patrick Oare Secretary

ACTION BY UNANIMOUS WRITTEN CONSENT IN
LIEU OF FIRST MEETING BY THE BOARD OF DIRECTORS
OF
**DAIM Logistics Inc,**
a New York Corporation

The undersigned, constituting all of the members of the board of directors (the "Board") of **DAIM Logistics Inc,** a New York corporation (the Corporation), in lieu of holding a meeting of the Board, hereby consent to the taking of the actions set forth herein, and the approval and adoption of the following resolutions by this unanimous written consent ("Written Consent") pursuant to Section 708 of the New York Business Corporation Law and the Bylaws of the Corporation:

Certificate of Incorporation

RESOLVED, that the Certificate of Incorporation of the Corporation filed with the New York Department of State and certified by the office of the New York Secretary of State hereby is adopted, ratified and affirmed in all respects.

RESOLVED FURTHER, that the Secretary of the Corporation is authorized and directed to insert a certified copy of the Certificate of Incorporation in the Corporation's minute book.

Stock Issuance

RESOLVED, that the officers of the Corporation are hereby authorized to issue and sell shares of common stock of the Corporation, 1 par value (the "Shares"), which the Board hereby determines to be the fair market value of the Corporation's common stock as of the date hereof, to each person named below (the "Shareholder"), in the amounts specified opposite each name in exchange for cash or contributed property as follows:

| Name of Shareholder | Number of Shares | Total Purchase Price($) |
|---|---|---|
| Patrick Oare | 51 | $5,000.00 |
| Christian Oare | 49 | $5,000.00 |

RESOLVED FURTHER, that the Board hereby determines that the consideration to be received for the above-mentioned Shares is adequate for the Corporation's purposes, and that the sale and issuance of the Shares to each of the above-named persons shall be conditioned upon receipt by the Corporation of the purchase price of said Shares and final copies of all appropriate documentation required by Corporation.

RESOLVED FURTHER, that upon the issuance and sale in accordance with the foregoing resolutions, such Shares shall be validly issued, fully paid and non-assessable shares of common stock of the Corporation.

RESOLVED FURTHER, that the officers of the Corporation are hereby authorized and directed, for and on behalf of the Corporation, (i) to take all actions necessary to comply with applicable laws with respect to the sale and issuance of the Shares, (ii) to thereafter execute and deliver on behalf of the Corporation, pursuant to the authorization above, share certificates representing the Shares set forth above, and (iii) to take any such other action as they may deem necessary or appropriate to carry out the issuance of the Shares and intent of these resolutions.

Election of Officers

RESOLVED, that the following individuals are hereby elected to serve in the offices of the Corporation set forth opposite their names until their successors are duly elected and qualified, or their earlier death, resignation or removal:

President: Christian Oare
Treasurer: Patrick Oare
Secretary: Patrick Oare
Vice President : Patrick Oare

Corporate Records and Minute Book

RESOLVED, that the officers of the Corporation are hereby authorized and directed to procure all corporate books, books of account and stock books that may be required by the laws of New York or of any foreign jurisdiction in which the Corporation may do business or which may be necessary or appropriate in connection with the business of the Corporation.

RESOLVED FURTHER, that the officers of the Corporation are authorized and directed to maintain a minute book containing the Certificate of Incorporation, as filed with the New York Department of State and certified by the office of the New York Secretary of State and as may be amended from time to time, its Bylaws and any amendments thereto, and the minutes of any and all meetings and actions of the Board, Board committees and the Corporation's shareholders, together with such other documents, including this Written Consent, as the Corporation, the Board or the Corporation's shareholders shall from time to time direct and to ensure that an up to date copy is also kept at the principal executive office of the Corporation (as designated below).

Shares Certificates

RESOLVED, that the form of Shares certificate attached hereto has been presented to the Board for review and is hereby approved and adopted as the form Shares certificate of the Corporation and the Secretary of the Corporation is directed to insert such form Shares certificate in the minute book of the Corporation.

Ratification of Actions by Incorporator

RESOLVED, that the Action by Written Consent of the Sole Incorporator dated October 7, 2007 and all actions taken by the Corporation's sole incorporator, and its agents, in connection with the formation of the Corporation are hereby in all respects approved, ratified and affirmed for and on behalf of the Corporation.

Annual Accounting Period

RESOLVED, that until otherwise determined by the Board the fiscal year of the Corporation shall end on December31.

Principal Executive Office

RESOLVED, that the principal executive office of the Corporation shall initially be located at 128 Park Dr., Fultonville, New York 12072.

Bank Accounts

RESOLVED, that the officers of the Corporation are hereby authorized and directed to establish, maintain and close one or more accounts in the name of the Corporation for the funds of the Corporation with any federally insured bank or similar depository; to cause to be deposited, from time to time, in such accounts, such funds of the Corporation as such officer deems necessary or advisable, and to designate, change or revoke the designation, from time to time, of the officer or officers or agent or agents of the Corporation authorized to make such deposits and to sign or countersign checks, drafts or other orders for the payment of money issued in the name of the Corporation against any funds deposited in any of such accounts; and to make such rules and regulations with respect to such accounts as such officers may deem necessary or advisable, and to complete, execute and deliver any documents as banks and similar financial institutions customarily require to establish any such account and to exercise the authority granted by this resolution including, but not limited to, customary signature card forms and form banking resolutions.

RESOLVED FURTHER, that all form resolutions required by any such depository, if any, are adopted in such form used by such depository by this Board, and that the Secretary is authorized to certify such resolutions as having been adopted by the Board and directed to insert a copy of any such form resolutions in the minute book of the Corporation.

RESOLVED FURTHER, that any such depository to which a certified copy of these resolutions has been delivered by the Secretary of the Corporation is entitled to rely upon such resolutions for all purposes until it shall have received written notice of the revocation or amendment of these resolutions, as adopted by the Board.

Qualification to do Business

RESOLVED, that the officers of the Corporation are hereby authorized and directed for and on behalf of the Corporation to take such action as they may deem necessary or advisable to effect the qualification of the Corporation to do business as a foreign corporation in each state that the officers may determine to be necessary or appropriate, or to withdraw from or terminate the Corporation's qualification to do business in any such state.

RESOLVED FURTHER, that any resolutions which in connection with the foregoing shall be certified by the Secretary of the Corporation as having been adopted by the Board pursuant to this Written Consent shall be deemed adopted pursuant to this Written Consent with the same force and effect as if presented to the Board and adopted thereby on the date of this Written Consent, and shall be included in the minute book of the Corporation.

Payment of Expenses

RESOLVED, that the officers of the Corporation are hereby authorized and directed to pay all expenses of the incorporation and organization of the Corporation, including reimbursing any person for such person's verifiable expenses therefor.

Agent for Service of Process in New York

RESOLVED, that United States Corporation Agents, Inc. shall be appointed the Corporation's agent for service of process in New York.

Subchapter S Election

RESOLVED, that the Corporation shall elect to be treated as a" small business corporation" for income tax purposes under Subchapter S of Chapter 1 of the Internal Revenue Code of 1986, and under the parallel provisions of the laws of the state of New York and that the officers of the Corporation are hereby authorized and directed to complete and file or cause to be filed an Election by a Small Business Corporation with the Internal Revenue Service pursuant to Section 1362(a) of the Internal Revenue Code and obtain the written consent of each shareholder of the Corporation to such Subchapter S election and file such consent at the same time as the Election by a Small Business Corporation, or within an extended period of time as may be granted by the Internal Revenue Service.

Authorization of Further Actions

RESOLVED, that the officers of the Corporation are, and each of them hereby is, authorized, empowered and directed, for and on behalf of the Corporation, to execute all documents and to take all further actions they may deem necessary, appropriate or advisable to effect the purposes of each of the foregoing resolutions.

RESOLVED, that any and all actions taken by any officer of the Corporation in connection with the matters contemplated by the foregoing resolutions are hereby approved, ratified and confirmed in all respects as fully as if such actions had been presented to the Board for approval prior to such actions being taken.

IN WITNESS WHEREOF, each of the undersigned, being all the directors of the Corporation, has executed this Written Consent as of the date set forth below.

Date: October 7, 2007                          Directors:

                                               _____
                                               Patrick Oare

                                               _____
                                               Christian Oare